| | | |
|---|---|---|
| JOANN HARPER, individually and as Plaintiff ad Litem for David C. Harper, deceased<br>606 E. Porter Ridge Court<br>Kearney, Missouri 64060 | )<br>)<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | Case No. |
| UNITED STATES OF AMERICA<br>Serve: Office of Chief Counsel<br>    U.S. Department of Veteran Affairs<br>    Building 25, Room 308<br>    1 Jefferson Barracks Drive<br>    St. Louis, Missouri 63125<br>and | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| MISSOURI DEPARTMENT OF PUBLIC SAFETY<br>Serve: Sandy Karsten, Director<br>    Office of the Director<br>    Missouri Department of Public Safety<br>    1101 Riverside Drive<br>    Lewis & Clark Building, 4th Floor West<br>    P.O. Box 749<br>    Jefferson City, Missouri 65102<br>and | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| MISSOURI VETERANS COMMISSION<br>Serve: Paul Kirchoff, Executive Director<br>    Missouri Veterans Commission<br>    205 Jefferson Street<br>    12th Floor Jefferson Building<br>    P.O. Drawer 147<br>    Jefferson City, Missouri 65102 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

## COMPLAINT
(*Allegations Common to All Counts*)

1

COMES NOW Plaintiff Joann Harper, and for her allegations common to all counts of this Complaint against Defendants states and alleges:

1. At all material times, Decedent David C. Harper was a veteran of the United States Armed Forces, who resided at the Missouri Veterans Home – Cameron (MVHC), 1111 Euclid Avenue, Cameron, Missouri 64429. As a resident of MVHC, Decedent David C. Harper also received medical care there.

2. This action is brought in accordance with the Missouri Wrongful Death Statute RSMO § 537.080 et seq.

3. At all material times, Plaintiff Joann Harper was the wife of Decedent David C. Harper. Plaintiff Joann Harper resides at the above captioned address in Kearney, Clay County, Missouri. Plaintiff Joann Harper is a proper party to bring this suit in the wrongful death of Decedent David C. Harper pursuant to R.S.Mo. § 537.080 (1).

4. Plaintiff Joann Harper in her capacity of Plaintiff ad Litem brings this action pursuant to R.S.Mo. §§ 537.020 and 537.021, under the Missouri survival statute, for the loss of chance of recovery of her husband, Decedent David C. Harper, who died on May 3, 2019.

5. Defendant United States of America (Defendant USA) is a government entity that is responsible for formally recognizing and certifying state veterans' homes that participate in the United States Veterans Administration's State Veterans Home program, including, in particular, MVHC. Defendant USA also is responsible for surveying the facility annually to make sure that it continues to meet VA standards. Defendant USA also is responsible for employing staff, implementing policies, and conducting training at MVHC.

6.     Defendant Missouri Department of Public Safety (DPS) is a government entity of the state of Missouri. Among other things, it comprises the Missouri Veterans Commission, which operates and manages state veterans' homes across the state, including MVHC.

7.     Defendant Missouri Veterans Commission (MVC) is a Missouri state agency and division of the Missouri Department of Public Safety, established to aid veterans, their dependents, and legal representatives by providing information regarding the rights of veterans and their dependents and to help veterans access their benefits through the state and federal government. Defendant MVC operates and manages state veterans' homes across Missouri, including MVHC.

8.     Missouri law, section 41.127, RSMo., requires state veterans' homes, including MVHC, to participate in the per diem grant program administered by the United States Veterans Administration (VA). To receive the per diem, Missouri state veterans' homes, including MVHC, must meet the VA standards set forth at 38 C.F.R. §51.100, *et seq*. Among other things, these VA standards require state veterans' homes, including MVHC, to meet several safety standards and outline the facility, staffing, and service requirements applicable to such state-sponsored veterans' homes.

9.     This Court has jurisdiction over this matter pursuant to Title 28, U.S.C. § 2671, et seq., the Federal Tort Claims Act, and pursuant to Title 28, U.S.C. § 1346. This Court has supplemental jurisdiction pursuant to 28 U.S.C. 1367. This case arises in the State of Missouri, more specifically the Western District of Missouri. Venue lies in this Court as the negligent acts complained of occurred in Clinton County, Missouri, pursuant to 28 U.S.C. § 1391.

10.    Plaintiff timely filed an administrative claim "Form 95" for personal injury with the Department of Veterans Affairs. Such claim was received by the Department of Veteran Affairs on March 3, 2021. More than five (5) months have elapsed since the filing of the

administrative claim with no final disposition of such claim.

11. At all material times, the health care providers and/or personnel who attended Decedent David C. Harper on his admissions and health care treatment at MVHC, from April 3, 2013, until his death on May 3, 2019, directly and indirectly were employed as agents, servants and employees of Defendants. In doing and omitting to do all the things alleged herein, Defendants' agents, servants, and employees were acting within the scope and course of their employment as health care providers and/or personnel for Defendants, and Decedent David C. Harper was monitored and treated by Defendants' agents, servants, and employees.

CONSTITUTIONAL OBJECTIONS

12. Plaintiff wishes to raise as early as possible Constitutional objections concerning recent legislation concerning medical malpractice/negligence actions.

13. House Bill 393, enacted in 2005, and numerous particular provisions therein, violate the Missouri Constitution and are therefore invalid and without legal effect, as more fully discussed herein.

14. House Bill 393 violates the requirements in Article III, Section 23 of the Missouri Constitution that a bill have only a single subject and that that subject be clearly expressed in its title. The title of HB393 purports to repeal various statutes and enact in lieu thereof twenty-three new sections relating to claims for damages and payment thereof. This title is unconstitutionally under-inclusive because the bill addresses multiple subjects and because some of the provisions enacted under the bill relate to claims other than claims for damages.

15. Section 538.210 of the Revised Statutes of Missouri, which purports to limit Plaintiffs' recovery for non-economic damages against a health care provider in an action for

damages for personal injury or death arising out of the rendering of or the failure to render health care services, violates:

    a. Plaintiffs' rights to equal protection of the law, guaranteed by Article I, Section 2 of the Missouri Constitution, because: (1) the cap on non-economic damages irrationally treats plaintiffs in medical malpractice cases differently than plaintiffs in other tort cases, (2) the cap on non-economic damages irrationally treats plaintiffs with severe injuries and large economic damages differently than plaintiffs with little economic damages, (3) the cap on non-economic damages irrationally treats plaintiffs injured by one tortfeasor differently than plaintiffs injured by multiple tortfeasors, (4) the cap on non-economic damages irrationally treats plaintiffs injured by one act, or occurrence, of negligence differently than plaintiffs injured by multiple acts, or occurrences, of negligence, (5) the denial of pre-judgment interest in medical malpractice cases is an arbitrary and irrational distinction between plaintiffs injured by health care providers and plaintiffs injured by other tortfeasors and (6) the cap on punitive damages irrationally treats plaintiffs in tort actions where the defendant pleads guilty to or is convicted of a felony differently than plaintiffs in actions where a criminal prosecution of the defendant is not pursued or is unsuccessful;

    b. Plaintiffs' rights to due process of law, guaranteed by Article I, Section 10 of the Missouri Constitution, because it unreasonably deprives the plaintiff of full and fair compensation for their injuries;

c. Plaintiffs' rights to a certain remedy for every injury, guaranteed by Article I, Section 14 of the Missouri Constitution, because the statute fails to provide a reasonable substitute for the damages denied to plaintiffs under the statute;

d. Plaintiffs' rights to trial by jury, guaranteed by Article I, Section 22(a) of the Missouri Constitution, because the right to trial by jury as provided for in the Constitution includes the right to have a jury determine all of the plaintiffs' damages without interference by the legislature;

e. the separation of powers, established by Article II, Section 1 of the Missouri Constitution, because it is within the fundamental and inherent function of the courts, not the legislature, to remit verdicts and judgments; and

f. the prohibition against special laws granting to any corporation, association, or individual any special or exclusive right, privilege or immunity, established by Article III, Section 40 (28) of the Missouri Constitution, because the cap (1) arbitrarily distinguishes between slightly and severely injured plaintiffs, (2) arbitrarily distinguishes between plaintiffs with identical injuries and (3) arbitrarily distinguishes between individual types of injuries.

16. Furthermore, application of § 538.210, which purports to limit plaintiffs' recovery for noneconomic damages against a healthcare provider in an action for personal injury arising out of the rendering or failure to render health care services, would violate the proscription against retroactive laws found in Article I, Section 13 of the Missouri Constitution.

17. Section 538.225 of the Revised Statutes of Missouri, which requires plaintiffs' counsel to submit an affidavit stating that counsel has obtained the written opinion of a legally qualified health care provider that each defendant had breached the applicable standard of care,

6

purports to limit the definition of "legally qualified health care provider" to those who either are practicing or have recently practiced the same specialty as the defendant, and purports to require the court to dismiss the action if either plaintiff's counsel fails to submit said affidavit or, after in camera review of the written opinion, the court determines that there is not probable cause to believe that a qualified and competent health care provider will testify that the Plaintiff was injured due to medical negligence by a defendant, violates:

    a. Plaintiffs' rights to open courts and a certain remedy for every injury, guaranteed by Article I, Section 14 of the Missouri Constitution;

    b. Plaintiff's rights to trial by jury, guaranteed by Article I, Section 22(a) of the Missouri Constitution;

    c. the separation of powers, established by Article II, Section 1 of the Missouri Constitution; and

    d. the requirement that any law amending or annulling a Supreme Court rule of practice, procedure, or pleading be limited to that purpose, established by Article V, Section 5 of the Missouri Constitution.

18. Section 490.715 of the Revised Statutes of Missouri, which purports to transfer from the jury to the court the authority to determine the value of medical treatment rendered to the Decedent, violates Plaintiffs' rights to trial by jury as guaranteed by Article I, Section 22(a) of the Missouri Constitution, because the right to trial by jury as provided for in the Constitution includes the right to have a jury determine all of the plaintiff's damages without interference by the legislature.

19. Section 408.040 of the Revised Statutes of Missouri, which purports to establish different rates for the calculation of post-judgment interest in tort and non-tort actions, as well as

different rates for the calculation of pre- and post-judgment interest in tort actions, violates Plaintiffs' right to equal protection of the law, guaranteed by Article I, Section 2 of the Missouri Constitution.

20. Section 538.300 of the Revised Statutes of Missouri, which purports to exempt tort claims against health care providers from the statutory requirements for payment of pre- and post-judgment interest set forth in Section 408.040 of the Revised Statutes of Missouri, violates plaintiffs' right to equal protection of the law, guaranteed by Article I, Section 2 of the Missouri Constitution and the prohibition against special laws granting to any corporation, association, or individual any special or exclusive right, privilege or immunity, established by Article III, Section 40 (28) of the Missouri Constitution.

21. Section 537.067 of the Revised Statutes of Missouri, which purports to eliminate the joint and several liability of tort defendants who are found to bear less than fifty-one percent (51%) of the fault for plaintiff's injuries, and to prohibit any party from disclosing the impact of this provision to the jury, violates:

> a. Plaintiffs' right to due process of law, guaranteed by Article I, Section 10 of the Missouri Constitution, because it may unreasonably deprive the plaintiffs of full compensation for their injuries; and
>
> b. Plaintiffs' right to a certain remedy for every injury, guaranteed by Article I, Section 14 of the Missouri Constitution, because the statute fails to provide a reasonable substitute for the damages denied to plaintiffs under the statute.

22. Furthermore, the application of §537.067, which purports to eliminate joint and several liability of tortfeasors who are found to bear less than fifty-one percent (51%) of the fault for plaintiffs' injuries, and to prohibit any party from disclosing the impact of this provision to

the jury, would violate the proscription against retroactive laws found in Article I, Section 13.

## FACTUAL ALLEGATIONS

23. Decedent David C. Harper was a resident of MVHC from April 3, 2013, until May 2, 2019.

24. At admission to MVHC, Decedent had a medical diagnosis of atrial fibrillation, among other things.

25. Decedent's doctor prescribed a blood thinner, Eliquis, to help prevent clots from developing in Decedent's body secondary to the irregular pumping of his heart due to atrial fibrillation.

26. The nursing staff at MVHC administered Eliquis to Decedent at the prescribed dosage of five milligrams every twelve hours from a start date of August 9, 2018, until March 11, 2019, when Decedent's doctors ordered the medication temporarily held pending Decedent's scheduled colon and hernia surgery on March 15, 2019, at North Kansas City Hospital.

27. While hospitalized at North Kansas City Hospital following this surgery, Decedent received the injectable blood thinner Lovenox, to prevent the development of clots in his heart and legs.

28. Upon Decedent's discharge from North Kansas City Hospital and transfer back to MVHC on March 25, 2019, his doctors ordered that MVHC resume administering Eliquis to him at the prescribed dosage of five milligrams every twelve hours.

29. Despite this discharge order, MVHC staff failed to resume administration of Eliquis at the prescribed dosage after Decedent returned to MVHC on March 25, 2019.

30. On April 26, 2019, Decedent was diagnosed with a urinary tract infection and started on Cipro, an oral antibiotic.

31. In late April 2019, Decedent's family members observed changes in his condition, including extreme lethargy and an inability to stay awake. Decedent's daughter reported these changes to VA Nurse Patty Church on April 30, 2019.

32. On the morning of May 1, 2019, Decedent suffered a seizure that lasted about six seconds. Approximately two hours later, Dr. Fred Kiehl examined Decedent and reviewed his list of medications. Believing that the antibiotic Cipro had lowered Decedent's seizure threshold and triggered the seizure, Dr. Kiehl ordered a blood level of Keppra, Decedent's seizure medicine, and ordered that Decedent receive Ativan if he experienced more seizures.

33. At approximately 7:37 p.m. on the evening of May 1, 2019, MVHC staff observed that Decedent had a low temperature of 95.7 degrees Fahrenheit and a low blood pressure of 100/57.

34. Later the same evening, Decedent's son visited him at MVHC and reported to MVHC staff his concern that Decedent was sweating profusely. Although MVHC staff informed Decedent's son that Decedent did not have a fever, MVHC staff placed a fan in Decedent's room due to Decedent's profuse sweating.

35. At about 5:00 a.m. on May 2, 2019, MVHC staff observed that Decedent was experiencing labored breathing, rapid pulse, and low oxygen saturations that did not increase above 90 percent even after he was placed on oxygen. They also observed that he had suffered multiple additional seizures.

36. At about 5:38 a.m. on May 2, 2019, Decedent was transported to Cameron Regional Hospital, where the emergency department treated and stabilized him. Concerned about Decedent's hypotension, respiratory distress, and the possibility that he might have suffered an

acute heart attack, Cameron Regional Hospital transferred him to North Kansas City Hospital, which admitted him to its intensive care unit.

37. Doctors at North Kansas City Hospital determined that Decedent had not suffered an acute heart attack. Because Decedent's accompanying MVHC records inaccurately indicated that he was chronically anticoagulated with Eliquis due to atrial fibrillation, however, they initially treated him primarily for low blood pressure and congestive heart failure.

38. After the admitting physician at North Kansas City Hospital noticed some swelling in Decedent's right leg, however, she ordered a doppler study of the leg. The results revealed that Decedent was suffering from deep vein thrombosis (DVT), with blood clots in the deep veins of his right leg and thigh.

39. A CT angiogram of Decedent's chest then revealed extensive thromboemboli (blood clots that traveled to the lung) partially occluding the major blood vessels of both lungs and causing right-sided heart strain.

40. North Kansas City Hospital personnel administered heparin, an intravenous blood thinner, to try and dissolve the clots. Because they were relying upon the inaccurate list of Decedent's medications that Defendant provided and, therefore, believed that Decedent already was chronically anticoagulated with Eliquis, the treating hospitalist and pharmacist at North Kansas City Hospital ordered and administered a lower-than-recommended starting dose of heparin without a loading dose. This resulted in a sub-therapeutic initial emergency heparin treatment for the pulmonary embolus.

41. While Decedent's condition stabilized for a short time following administration of heparin, he again experienced respiratory distress, falling blood pressure, and more seizures. He

died at 4:09 a.m. on May 3, 2019, of extensive pulmonary emboli, causing right heart strain, cardiogenic shock, and respiratory failure.

42. A subsequent internal investigation revealed that MVHC failed to re-start Decedent's prescribed dosage of Eliquis upon readmission to MVHC on March 25, 2019, due to a computer programming error. This error caused Eliquis to appear "grayed out" or discontinued on Decedent's Medication Administration Record (MAR), which the nursing staff used to administer medications. As a result of this error, MVHC personnel failed to administer the prescribed twice-daily dosage of Eliquis to Decedent from March 12, 2019, until he went to the hospital on May 2, 2019, with fatal blood clots.

## COUNT I
### (*Wrongful Death*)

COMES NOW Plaintiff Joann Harper and for Count I of this Complaint against Defendants, pursuant to R.S.Mo. §537.080, states and alleges:

43. Plaintiff hereby incorporates by reference each of the preceding paragraphs as though fully set forth herein.

44. Defendant USA, operating through its agents, servants or employees had a duty to Decedent David C. Harper to provide medical care in accordance with the accepted standards of care for physicians and nursing homes providing medical care, including the proper and timely administration of Decedent's required medication and the proper and timely diagnosis and treatment of Decedent's medical conditions and disease processes; Defendant USA further had a duty, by and through its agents, servants and employees to provide proper medical care to the patients and residents at the Missouri Veterans' Home – Cameron, and, in particular to Decedent David C. Harper.

45. Defendants, through their agents, servants and employees, breached said duties by negligently failing to measure up to the standards of due care required by members of Defendants' profession in the following particulars, to wit:

   a. They failed to administer the blood thinner, Eliquis, to Decedent David C. Harper in the dosage prescribed to prevent the development of blood clots; and/or

   b. They failed to respond to Decedent David C. Harper's distress and change of condition in a timely manner; and/or

   c. They provided an inaccurate list of Decedent David C. Harper's medications on May 2, 2019, to Cameron Regional Hospital and North Kansas City Hospital, thereby delaying the diagnosis and appropriate treatment of Decedent's pulmonary embolus; and/or

   d. They failed to properly manage Decedent David C. Harper's anti-coagulation medication and/or therapy; and/or

   e. They failed to properly monitor and/or assess Decedent David C. Harper's anti-coagulation medication and/or therapy; and/or

   f. They failed to properly monitor and/or assess Decedent David C. Harper's INR blood levels; and/or

   g. They failed to administer Decedent David C. Harper's anti-coagulation medication; and/or

   h. They failed to properly monitor and assess Decedent David C. Harper's physical condition; and/or

i. They failed to carry out the orders and/or instructions of Decedent David C. Harper's physician; and/or

j. They failed to timely transfer Decedent David C. Harper to a facility which could provide him adequate care; and/or

k. They failed to properly supervise its employees, agents, and/or servants who were responsible for the care and treatment of Decedent David C. Harper; and/or

l. They failed to be adequately staffed; and/or

m. They failed to provide proper anti-coagulation therapy and/or medication to Decedent David C. Harper; and/or

n. They failed to prevent the development of blood clots in Decedent David C. Harper; and/or

o. They failed to provide proper nourishment and/or nutrition to Decedent David C. Harper; and/or

p. They failed in further particulars presently unknown to Plaintiff, but which are believed will be discovered upon proper discovery within the litigation.

46. As a direct and proximate result of the negligence of Defendants, Decedent David C. Harper was caused injury that resulted in his death.

47. As a direct and proximate result of the negligence of Defendants, Decedent David C. Harper suffered and endured prior to his death a significant level of physical and mental pain and suffering.

48. As a direct and proximate result of the negligence of Defendants, Plaintiff Joann Harper, as the wife and heir at law of Decedent David C. Harper, has suffered mental anguish,

suffering, and bereavement; loss of society, companionship, comfort, and protection; loss of marital care, attention, advice and counsel; loss of parental care, training, guidance, and education; and reasonable funeral expenses.

WHEREFORE, Plaintiff Joann Harper prays for judgment against Defendants under Count I of this Complaint, for just and fair compensation adequate to compensate Plaintiff for the injuries and damages suffered and incurred in the past and will continue to suffer and incur in the future, as well as for Plaintiff's costs herein incurred and expended, and for such and further relief as the Court may deem just and necessary under the circumstances.

## COUNT II
(*Loss Chance of Recovery and/or Survival*)

COMES NOW Plaintiff Joann Harper, as Plaintiff ad Litem for David C. Harper, deceased, and for Count II of this Complaint against Defendants, and alleges:

49. Plaintiff ad Litem Joann Harper hereby incorporates each of the preceding paragraphs as though fully set forth herein.

50. Defendants through their agents, employees, and/or servants while within the scope of their employment, owed a duty to Decedent David C. Harper to possess and use the degree of skill and learning ordinarily used under the same or similar circumstances by members of Defendantss profession; Defendants further had a duty to provide proper medical care to patients and, in particular to Decedent David C. Harper.

51. Defendants breached said duties and were negligent in failing to use that degree of skill, care, learning, and judgment ordinarily used under the same or similar circumstances by members of its profession as stated herein and incorporated by reference.

52. As a direct and proximate result of the negligence and wrongdoing of Defendants as aforesaid, Decedent David C. Harper, who prior thereto had a material chance of survival and/or recovery, lost such chance for survival and/or recovery due to the negligence of Defendants.

53. As a direct and proximate result of the negligence of Defendants, Decedent David C. Harper was caused to be damaged and injured as follows: he suffered a loss of a material chance of recovery; he suffered much greater pain of body and mind due to the negligent treatment by Defendants; he suffered a reduced life expectancy; he incurred reasonable and necessary medical expenses, including but not limited to, hospital bills, doctor's bills, and other related bills for medical treatment, the exact amount of which is unknown at this time; he suffered a loss of his enjoyment of life; that his injuries were permanent and progressive, and he suffered permanent injuries, disabilities, and a loss of chance of recovery.

54. As a direct result of the loss of survival and/or recovery of Decedent David C. Harper, Joann Harper as Plaintiff ad Litem seeks recovery of such damages that Decedent David C. Harper suffered between the time of his injuries and the time of his death, and for the recovery of which the decedent might have maintained an action had death not ensued; further, Plaintiff seeks damages for the pecuniary loss suffered by reason of the death of Decedent David C. Harper, including funeral expenses and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support which Plaintiff has been deprived by reason of the death of David C. Harper.

WHEREFORE, Plaintiff Joann Harper, as Plaintiff ad Litem for David C. Harper, deceased, prays for judgment against Defendants under Count II of this Complaint, for just and fair compensation adequate to compensate Plaintiff for the injuries and damages Decedent David C. Harper has suffered and incurred in the past, as well as for Plaintiff's costs herein incurred and

expended, and for such and further relief as the Court may deem just and necessary under the circumstances.

          Respectfully submitted,

          /s/ Maureen M. Brady

          _____
          Maureen M. Brady    MO #57800
          Lucy McShane       MO #57957
          MCSHANE & BRADY, LLC
          1656 Washington Street, Suite 120
          Kansas City, MO 64108
          Telephone: (816) 888-8010
          Facsimile: (816) 332-6295
          E-mail: mbrady@mcshanebradylaw.com
                  lmcshane@mcshanebradylaw.com
          **ATTORNEYS FOR PLAINTIFFS**